Plaintiff is the owner of a lot of ground in the Town of Winnfield, Louisiana, which abuts Front Street on its west side 53 feet and runs back westerly between parallel lines 100 feet or more to the right of way of the Chicago, Rock Island and Pacific Railroad. The north side of the lot is 104 feet from Lafayette Street, which courses easterly and westerly through the business section of the town. Front Street crosses Lafayette Street at right angles. There is now as has been since 1917, a frame residence upon the lot, consisting of five rooms, a sleeping porch and bathroom.
In February, 1938, the Louisiana Highway Commission completed a modern concrete and steel overpass with approaches on Lafayette Street, over the railroad tracks, the east terminus of which ends at the east side of Front Street, several feet above it. To make possible continued vehicular traffic on Front Street the surface thereof was reduced by a sloping excavation beginning opposite the northeast corner of plaintiff's property and extending under and for a short distance beyond the overpass.
Plaintiff, believing that the erection and maintenance of this public improvement damaged her property by depreciating its market and rental value, instituted this suit for damages against the Commission. The elements of damages alleged upon are:
1. That the open space beneath the overpass provides refuge for undesirables, such as hoboes and tramps;
2. That egress from and ingress to her property has been made inconvenient and the distance to travel therefrom to the business district of the town increased.
She prays for judgment of $2,000.
Defendant interposed exceptions of no cause and no right of action which were overruled. They are seriously urged here. Answering, defendant denied that plaintiff's property has been damaged or injured to any extent as a result of the erection and maintenance of the overpass and approaches.
The trial judge reached the conclusion that the rental and market value of the property suffered diminution in value on account of the erection and maintenance of the overpass and fixed the measure thereof at $1,000. Judgment therefor was *Page 662 
rendered. He rejected as a factor contributing to the alleged diminution the fact that hoboes and tramps occasionally assembled beneath the overpass. After unsuccessful effort to procure a rehearing, defendant appealed. Plaintiff has not answered the appeal. In brief, she asks that the judgment be affirmed.
We are clearly of the opinion that the exceptions are well founded and shall dispose of the case upon those pleas.
The fact that hoboes and tramps find it convenient at times to loiter beneath the overpass, as held by the lower court, and by this court in companion suit, Thieme v. Louisiana Highway Commission, 5 So.2d 167, decided on the 12th day of December, 1941, cannot form the basis of a claim for damages. Enforcement of the laws against vagrancy would effectively dissipate the practice. This leaves for consideration, in passing on the exceptions, only one other issue raised thereby, to-wit:
Whether the allegations of the petition, if true, disclose a state of facts entitling plaintiff to damages or whether said allegations disclose that plaintiff has suffered merely an inconvenience not compensable under the laws of this state.
To accurately reflect plaintiff's position on this phase of the case, we quote verbatim her allegations:
"That prior to the construction of said bridge and overpass, in order to travel to the business section of the Town of Winnfield, to church, to school and to other places in and about town, one only had to go one-half block North to Lafayette Street then cross over the bridge in a westerly direction and thus had free and easy ingress and egress to and from said property.
"That since the construction of said bridge and overpass, petitioner's property has been isolated from Lafayette Street and other parts of the Town of Winnfield and now in order to go to and from said property one either has to go East along a back and narrow street approximately two blocks, then one block North through a narrow back street to Lafayette Street and then travel two blocks before reaching the overpass and bridge across Front Street and the Chicago, Rock Island Pacific Railroad, or go North along Front Street under overpass a distance of two and one-half blocks and then cross the main line track, and two switching spurs of the Chicago, Rock Island Pacific Railroad in order to reach the business section, churches, schools and other principal parts of the Town of Winnfield."
Analysis of these allegations, plus undisputed facts, reveals that prior to the erection of the overpass there was a wooden bridge on Lafayette Street over the railroad tracks that pedestrians and vehicles going from plaintiff's property and other places below on Front Street to the town's business section, would reach Lafayette Street at the intersection, 104 feet from the northeast corner of plaintiff's lot, then turn westerly and cross the bridge. Since the completion of the overpass there is open to pedestrians the same route to the business district as they formerly enjoyed, and, as to vehicular traffic, two routes are available. One is to drive north on Front Street, as was possible before, for two and one-half blocks (passing under the overpass), then turn west, cross the railroad tracks and enter the business district two or three blocks beyond. The other route carries vehicular traffic easterly on South Street one block, thence northerly one block on another street to Lafayette Street, thence westerly one block to the overpass. These streets are all hard surfaced. There is practically no difference in distance between the two routes. The latter route is only three blocks greater in distance than the original and the present route up Front Street and across the tracks.
Plaintiff's alleged right to recover damages is based upon the "or damaged" provision of Section 2, Art. 1 of the Constitution, which, in part, reads:
"Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
The exceptor contends that as neither plaintiff's property nor any property right of hers was invaded by the construction of the overpass, she has no cause or right of action for damages on that account. Supplementing this position, it is further contended that the "or damaged" provision was not intended to nor does it embrace damages to property not abutting the highway at or near the locus of the public work, when such damage, if any, is general to all property in the neighborhood *Page 663 
of plaintiff's, and not specially sustained by her property; that if any consequential damage has been suffered because of the improvement, such falls within the realm of damnum absque injuria. We agree with exceptor's supplemental position. It is sustained by decisive weight of authority; in fact, there appear to be no decisions to the contrary while there are scores of them in many different states, affirming the principle involved therein.
Prior to 1879 the "or damaged" provision appeared in none of the several constitutions of this state. It was incorporated in the organic law of that year for the first time. Article 156. Until this was done an owner could recover only the market or cash value of property actually "taken" for public purposes. Consequential damages resulting from the "taking" were not recoverable. The same was true as to those owners who were simply damaged from the erection of some public improvement no part of whose property was taken.
The first case in this state wherein this added guaranty was discussed and its purview defined, is that of McMahon Perrin v. St. Louis, Arkansas Texas Railroad Company reported in 41 La.Ann. 827, 6 So. 640, 641. Justice Fenner, the court's organ, in the course of the opinion, with his usual clarity of expression, said:
"As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is the diminution in the value of the property.
"There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i.e., to its value for rental and sale. Mere consequential injuries to the owners, arising from discomfort, disturbance, injury to business, and the like, remain, as they were before, damna absque injuria, particular sacrifices which society has the right to inflict for the public good.
"Such is the view taken by the supreme court of the United States in applying an identical provision of the constitution of the state of Illinois."
The Illinois case referred to is that of City of Chicago v. Taylor, reported in 125 U.S. 161, 8 S.Ct. 820, 822, 31 L.Ed. 638. The "or damaged" provision of the 1870 Constitution of Illinois, Smith-Hurd Stats.Const. art. 2, § 13, reads as does our own. In affirming judgment in favor of defendant in error, the court made this illuminating statement on the subject:
"Touching the provision in the constitution of 1870, the court said that the framers of that instrument evidently had in view the giving of greater security to private rights by giving relief in cases of hardship not covered by the preceding constitution, and for that purpose extended the right to compensation to those whose property had been `damaged' for public use; that the introduction of that word, so far from being superfluous or accidental, indicated a deliberate purpose to make a change in the organic law of the state, and abolished the old test of direct physical injury to the corpus or subject of the property affected. The new rule of civil conduct, introduced by the present constitution, the court adjudged, required compensation in all cases where it appeared `there has been some physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.'"
18 Am.Jur. page 766, treating of Depreciation through Disturbance of Property Right, verbo "Eminent Domain", gives the rule in this language, viz:
"But the damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the Constitution, but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use. To warrant a recovery the damage must be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the neighborhood, the injury is not within the provision of the Constitution."
The nearest approach factually to the present case, in this state, is the recent one *Page 664 
of Harrison et al. v. Louisiana Highway Commission et al.,191 La. 839, 186 So. 354. There, the plaintiffs sought to recover damages alleged to have been caused their respective properties abutting Texas Street in the City of Shreveport, Louisiana, by the erection of a modern bridge across Red River, the west approach of which extended up the street in front of plaintiffs' properties. The improvement did not physically touch either of the properties. The owners contended that because of the presence of the approach and the alterations made in the physical set-up theretofore existing, the market and rental values of the properties had suffered diminution. The consolidated suits were dismissed as of nonsuit on the ground that the proof adduced to support the damage claims was not sufficiently definite and strong to warrant judgment thereon. The court, to support its conclusions on the legal phases of the case, cited and approvingly quoted from McMahon Perrin v. St. Louis, A. T.R. Co., supra.
The courts of many states of the union, including Alabama, California, Illinois, Indiana, Minnesota, New York and Ohio, have been called upon in numerous cases to interpret and construe the "or damaged" provision of their constitutions in the light of the facts of each case. These courts are in unison on the subject. All agree that the property owner may recover under the organic guaranty when he has sustained special damage, differing in kind and not merely in degree from that sustained by the public generally. See 49 A.L.R. 336; New York, C. St. L.R. Co. v. Bucsi, 128 Ohio St. 134, 190 N.E. 562, 93 A.L.R. 632 et seq; City of Winchester v. Ring, 312 Ill. 544, 144 N.E. 333, 36 A.L.R. 520.
In the present case, granting that plaintiff's property has suffered some damage by way of inconvenience from the erection of the overpass, such damage is not special or exclusive as to her property. All other property owners on Front Street south of hers, and also owners for one block east and several blocks south, who formerly reached Lafayette Sweet via Front Street, are likewise affected. The damage or injury inflicted, whether such in legal contemplation or not, is more or less common to all owners, in that neighborhood. This being true, under the well settled judicial meaning of the "or damaged" provision, no recovery may be had. Such damages, as said in the McMahon 
Perrin case, supra, are "damna absque injuria, — particular sacrifices which society has the right to inflict for the public good".
We are of the opinion that a physical invasion of real property or of a real right is not indispensable to the infliction of damages within the meaning of the constitutional guaranty under discussion. If the public improvement, as a consequential effect, has caused special damage to property, such as is not sustained by the public or the neighborhood generally, whether it abuts the improvement or not, an action lies to recover. This is true although the improvement be made by an agency having lawful authority so to do. This principle is definitely recognized in the McMahon Perrin and Harrison cases, supra, also in City of Chicago v. Taylor.
However, as clearly reflected from the two Louisiana cases, proof of consequential damages must be clear, strong and convincing. The measure of such damages is the extent of diminution in market and rental value of the property or properties affected. The strictness of the rule regarding sufficiency of proof in such cases is emphasized in the Harrison case.
We do not think plaintiff would have cause for complaint in legal contemplation had the second route, the one to Lafayette Street, been closed entirely since a short, direct and accessible route over Front Street was continued available to her. It is also well settled that inconveniences following the changing, relocating and/or altering of road and street routes do not give rise to a valid claim to damages if there is provided reasonable means of ingress and egress to and from the property affected thereby. Louisiana Highway Commission v. Treadaway et al., La.App., 173 So. 209, Id., 175 So. 94; Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142.
See notes 49 A.L.R. 336. One of the leading cases cited in these notes is that of Cram v. Laconia, 71 N.H. 41, 51 A. 635, 57 L.R.A. 282. "But it is well settled that if the owner of property not abutting *Page 665 
on the closed section has reasonable access to the general system of streets, the fact that he may suffer inconvenience or loss of trade because of the closing or vacation will not entitle him to compensation, such injury being damnum absque injuria".
In 25 Am.Jur. Section 109, page 408, verbo "Highways", the general rule is stated to be: "* * * a mere diversion of traffic by reason of the establishment of a new highway or a new traffic route does not constitute a compensable injury to the owner of property abutting on the old way or route where the means of access to his premises is not impaired."
The case of New York, Chicago St. Louis Railroad Company et al. v. Bucsi et al., 128 Ohio St. 134, 190 N.E. 562, 93 A.L.R. 632, decided in 1934, is a leading one on the subjects under discussion. The syllabus of the case declares the rule in this language:
"Where a duly dedicated and accepted east and west street of a city is vacated by the city some distance from its eastern terminus and completely closed to travel, the owner of property abutting upon such street but not upon the vacated portion thereof has no right of action for damages because of such vacation, so long as his access to the city street system to the west is not impaired. * * * Under such circumstances, the abutting property owner's damage, if any, differs in degree but not in kind from that of the general public, and his legal status falls within the category of damnum absque injuria."
It is well settled by decisions of the courts of this state that notwithstanding the Louisiana Highway Commission is a state agency, as are levee boards and police juries, it cannot take or damage private property for public purposes without paying just and adequate compensation therefor. Neither of said agencies enjoys the degree of sovereign immunity as does the state. Paret et al. v. Louisiana Highway Commission, 178 La. 454, 151 So. 768; Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169; Connolly et al. v. Louisiana Highway Commission, 177 La. 78,147 So. 505; Murff v. Louisiana Highway Commission, 19 La.App. 847, 140 So. 863; Marbury et al. v. Louisiana Highway Commission, La.App., 153 So. 590; De Moss v. Police Jury of Bossier Parish,167 La. 83, 118 So. 700, 68 A.L.R. 336; McGeehan et al. v. Board of Levee Commissioners, 165 La. 241, 242, 115 So. 473.
Plaintiff cites and relies upon these cases. They are not pertinent. In each of them there was a physical invasion of real property or of a real right. Not one of them involved facts on all fours with nor similar to those in the instant case.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; and there is now judgment for defendant sustaining the exceptions of no cause and no right of action and dismissing plaintiff's suit at her cost. *Page 916