(No. 18982.—

ARTHUR J. HAGGENJOS, Plaintiff in Error, *vs.* THE CITY OF CHICAGO, Defendant in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

WILLIAM McKINLEY, and PAUL E. PRICE, (DENT, DOBYNS & FREEMAN, and ARTHUR J. HAGGENJOS, of counsel,) for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, FRANK PESKA, EDWARD C. HIGGINS, and JOHN G. DRENNAN, (ALBERT H. VEEDER, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error presents by this record the question of the validity of an ordinance of the city of Chicago which provided that after January 2, 1928, no person owning, controlling or operating any vehicle should cause or permit it to stand on any public street or alley in the city of Chicago within a district bounded on the north by Wacker drive, on the east by Michigan boulevard, on the south by the south line of Harrison street and on the west by Market street, between the hours of 7:00 o'clock in the morning and 6:30 in the evening, except on Sundays, certain holidays, and on Saturdays after three o'clock in the afternoon. The ordinance expressly provided that it should not apply to ambulances or emergency vehicles of the city of Chicago, the Federal government or the county of Cook, or to public utilities while the operator of any public utility vehicle was engaged in the necessary performance of emergency duties. The plaintiff in error violated this ordinance by leaving his automobile standing on LaSalle street in front of and near the entrance to a building in which his office was, at a place within the district described in the

ordinance, while he went to his office and remained in consultation with a client for about thirty minutes, from 2:20 to 2:50 in the afternoon. Upon returning to the street, as he was about to enter his automobile, he was arrested for a violation of the ordinance. Upon a trial by jury in the municipal court of Chicago he was found guilty and was fined five dollars, and he has sued out a writ of error to reverse the judgment, the trial judge having certified that the validity of an ordinance was involved and that in his opinion the public interest required the case to be taken directly to the Supreme Court.

It appears from the evidence that for many years before the passage of the ordinance in question the streets within the area mentioned in it were continually much congested on account of the parking of vehicles and that automobiles were parked on both sides of such streets continuously during each day. The district described in the ordinance comprises the "loop," or down-town shopping and office district of the city of Chicago. The city council and certain civic organizations spent more than $50,000 in making a survey of the situation and an investigation as to what should be done to remedy such congestion of the streets, and after such exhaustive and expensive investigation the ordinance in question was passed by the city council.

The defendant in error filed a motion to strike from the record the statement of facts, and this motion was taken with the case. It will be overruled. It is said the statement of facts does not comply with paragraph 6 of section 23 of the Municipal Court act, which provides that in cases of the fourth and fifth classes it shall be the duty of the judge trying the case to sign and file in the case, if requested by either of the parties, a correct statement, to be prepared by the party requesting it, of the facts appearing upon the trial and of all questions of law involved in the case and the decision of such court on such questions of

law, and that such statement, together with the certified copy of the judgment and such other papers as may be specified by the judge, shall be certified to the Supreme or Appellate Court, as the case may be, as the record to be considered upon review. The statement in this case is preceded by the heading, "Statement of facts for purpose of record." It sets forth chronologically the proceedings at the trial without purporting to set out the evidence. It sets forth the facts appearing from the evidence on the trial, the objection to the introduction of the ordinance in evidence and the judgment of the court. The concluding sentence of the statement is, that it contains all of the evidence introduced on the trial of the cause. As a matter of fact it is not a statement of the evidence but is really a statement of facts, and this concluding statement, that it contains all the evidence, must be taken to mean that it is a correct statement of all the facts appearing on the trial, in compliance with the requirements of the statute.

It is not open to question that the legislature has conferred upon the city the power to regulate the use of the streets and the traffic upon them,—that is, the passage of persons and vehicles back and forth upon them,—and to prevent obstruction of them. Although this power of regulation has been conferred upon the city council, the legislature has not specified the precise manner in which it shall be exercised, and therefore the reasonableness of the exercise of the power by the council is open to inquiry by the courts.

It is argued on behalf of the plaintiff in error that the power to regulate does not include the power to prohibit, and that if the owner of a motor vehicle may be restricted in its use in the conduct of his business only to such use as may be made of it while in motion, then the ordinance totally denies him the use of his property. It has been said often that the power to regulate does not include the power to prohibit; and this is true in the sense that mere regulation is not the same as absolute prohibition. Regu-

lation of business or action implies the continuance of such business or action, while prohibition implies its cessation. On the other hand, the power to regulate implies the power to prohibit except upon the observance of authorized regulation. The ordinance does not prohibit the standing of vehicles on all streets throughout the city or at all times, but only on some streets and at some times. There can be no doubt about the power of a municipality to control travel upon its streets. Such regulations, on account of the crowded condition of the streets, are a necessity for the safety and welfare of the public as well as the convenience of the travelers. (*City of Chicago* v. *Marriotto,* 332 Ill. 44.) Without a regulation of traffic and of parking vehicles the use of congested streets would become dangerous, if not impossible. Parked vehicles occupying both sides of the street constitute obstructions to travel and seriously reduce the capacity of the streets for use by ordinary street traffic in the usual way. The ordinance in question was passed to provide against the public inconvenience arising from such condition. It is clear that some regulation of the standing of vehicles on the streets was necessary for the safety, welfare and convenience of the public. It was the duty of the city council to determine what regulation was required for the public welfare, and the only limitation on the exercise of its power was that such exercise should be reasonable. The question for determination, therefore, is whether the prohibition of standing vehicles on the streets throughout this territory, whose dimensions are said to be eight blocks by nine,—that is, we may presume, more than a half mile in each direction,—during the whole of every business day, was reasonable or not.

Ordinances prohibiting the parking of vehicles in certain restricted localities between certain hours or at all times, or limiting the parking privilege to an hour, to thirty minutes, to twenty minutes, are common and have been sustained. (*Pugh* v. *Crawford,* 156 N. W. (Iowa) 892; *Com-*

*monwealth* v. *Fenton,* 139 Mass. 195; *Taylor* v. *Roberts,* 94 So. (Fla.) 874; *Veneman* v. *Jones,* 118 Ind. 41.) The primary use of the streets is for purposes of travel, and while the paramount right to the use of a street in all its parts is in the public, yet such right is not an absolute right in every person at all times but is subject to such incidental and temporary or partial obstruction of the street by others as manifest necessity may require. The owners of lots bordering upon streets have the right to make all proper and reasonable use of the parts of the streets upon which the lots abut for the convenience of the lots, not inconsistent with the paramount right of the public to the use of the streets in all their parts. (*McCormick* v. *South Park Comrs.* 150 Ill. 516.) The delivery of merchandise, fuel or other articles, and of persons, at business and other houses on a street is a necessary incident to the use of a public highway. The streets of a city would be of comparatively little use if merchants could not deposit their goods in them temporarily in their transit to the storehouse or if vehicles carrying their goods could not stand on the street in front of their stores to deliver goods transported. A merchant may use and temporarily obstruct the street and sidewalk in front of his premises for loading and unloading goods when not restrained by ordinance, if he does not unnecessarily or unreasonably interfere with their use by the traveling public. Skids may be used in a reasonable manner, so as not to unnecessarily encumber or obstruct the sidewalk, for the purpose of facilitating the removal of merchandise. (*Tolman & Co.* v. *City of Chicago,* 240 Ill. 268.) So automobiles and other vehicles may be used for the same purpose, and neither the skids nor the automobiles or other vehicles may be absolutely prohibited from so occupying the sidewalk or street. The city may, in the general control of its streets, regulate the use of all these instrumentalities and prescribe the time, place, conditions and circumstances thereof, but it has no right to interfere with their

use except in the enforcement of an ordinance or in pursuance of judicial process. (*Tolman & Co.* v. *City of Chicago, supra.*) The streets in the district included in the ordinance were congested with vehicles, and the situation no doubt called for action by the council prescribing regulations which would relieve the congestion and provide for the freer movement of traffic than was possible under those conditions. The occupation of both sides of the streets by parked vehicles reduced the space left for travelers and was a contributing cause to the congestion of traffic. It might have been a reasonable exercise of power by the council to restrict the right to stand on the streets to a short time or to prevent it altogether at certain hours and in certain parts of the territory, but it was not a reasonable exercise of the power to prohibit the standing of any vehicle on the streets for any purpose or for any time, so as to prohibit throughout all the business hours of every business day the free use of the streets, in a reasonable way, to the people within the territory mentioned, and those desiring to transact business with them, to have reasonable and convenient access by automobile to the various parts of the territory described in the ordinance for the transaction of business and the receipt and delivery of goods in the ordinary way.

Counsel disagree about the meaning of the ordinance, and counsel for the city say in their brief there is only one question raised by plaintiff in error in his brief, and that is the question of the interpretation and meaning of the ordinance involved. They maintain that the ordinance does not purport to prevent vehicles using the streets for purposes which are incident to traffic, and that therefore there is no prohibition in the ordinance of the stopping of any vehicle for loading or unloading or for necessary stops in the flow of traffic, while the plaintiff in error contends that the ordinance purports to prevent the very thing that counsel for the city say it does not, and refers to the language

of the ordinance itself which prohibits only the permitting of a vehicle to stand on the street. There is no exception in the generality of the language on account of the purpose of the standing but it must be construed in connection with other portions of the traffic ordinances which require stops under certain circumstances, and it could not be regarded as a violation of the ordinance to stand on the street during a stop which is required by another ordinance of the city or by traffic conditions at the time and place. The language must be interpreted according to the ordinary meaning of the words. According to that meaning it prohibits every person from permitting a vehicle to stand on the street. The meaning of the language is not ambiguous, and there is nothing in the context or circumstances which justifies giving the language any different meaning. There is therefore no room for construction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*