Hart, J.
The principal question presented may be stated as follows:
Where the grade of a street constituting a portion of a state highway has been established and the owner of property abutting thereon has improved his property in reliance upon and in conformity to such grade, and thereafter a highway improvement is made upon such street by the Director of Highways of the state in accordance with legally approved plans and specifications whereby the width of the street or highway is narrowed and the grade of the remainder substantially lowered from the former grade to such extent that there is no physical access to or from the property to the street, does the owner of such property suffer a “taking” of his property and, if so, is he entitled to compensation by way of damages from the state, even though no- part of the physical property is taken or disturbed?
In some jurisdictions it is held that interference with access to the premises of an abutting owner by a public improvement in the street or highway does not, so long as no part of the physical property area is involved, constitute a “taking” or appropriation of the property for a public use requiring compensation to the owner therefor. Transportation Co. v. City of Chicago, 99 U. S., 635, 25 L. Ed., 336. This rule seems to be a relic of the ancient doctrine that the king can do no wrong, but it has never obtained in Ohio.
Since an early day, it has been the law of this state that an owner of real property has an easement in the public street on which his property abuts, as an appurtenance thereto; and that if a substantial change of grade in the street upon which the property abuts renders the buildings thereon less convenient of access there is an appropriation pro tanto of the property right in the easement for which compensation may be required.
*352 Section 19, Article I of the Constitution of Ohio,, provides as follows:
"Private property shall ever be held inviolate but subservient to the public welfare: When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money: * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.”
An early case on this subject which has since been consistently followed by the courts is that of Crawford v. Village of Delaware, 7 Ohio St., 459, wherein this court held:
"If erections are made on a lot in accordance with an established grade, and the grade is afterward altered, and a substantial injury is thereby done to-.the-owner-of a lot, he-is entitled to compensation.”
To the same effect, see Rhodes v. City of Cleveland, 10 Ohio, 159, 36 Am. Dec., 82; McCombs v. City of Akron, 15 Ohio, 474; Little Miami Rd. Co. v. Naylor, 2 Ohio St., 236; Cincinnati & Spring Grove Ave. St. Ry. Co. v. Village of Cumminsville, 14 Ohio St., 523; Jackson v. Jackson, 16 Ohio St., 163; City of Cincinnati v. Penny, 21 Ohio St., 499, 8 Am. Rep., 73; City of Youngstown v. Moore, 30 Ohio St., 133; City of Akron v. Chamberlain Co., 34 Ohio St., 328, 32 Am. Rep., 367; Railway Co. v. Lawrence, 38 Ohio St., 41, 43 Am. Rep., 419; Cohen v. City of Cleveland, 43 Ohio St., 190, 193, 1 N. E., 589; City of Cincinnati v. Whetstone, 47 Ohio St., 196, 24 N. E., 409; Smith v. Commissioners, 50 Ohio St., 628, 35 N. E., 796, 40 Am. St. Rep., 699; Lotze v. City of Cincinnati, 61 Ohio St., 272, 55 N. E., 828; Schimmelmann v. Lake Shore & Michigan Southern Ry. Co., 83 Ohio St., 356, 94 N. E., 840, 36 L. R. A. (N. S.), 1164; Smith v. Erie Rd. Co., 134 Ohio St., 135, 16 N. E. (2d), 310.
*353 In the case last cited this court held:
“Under Section 19, Article I, of the Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation.”
Judge Williams, writing the opinion in that case, said:
“In some of the early cases in this country, the courts, adhering to the conception of property as the thing owned, construed the taking alluded to in state constitutions to be a ‘taking altogether,’ an appropriation and dispossession of the owner, which deprived him of the corpus of the property, and compensation was limited accordingly. The broader view, which now obtains generally, conceives property to be the interest of the owner in the thing owned, and the ownership to afford the owner the rights of use, exclusion and disposition. Under this broad construction there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking.”
The majority of American jurisdictions have now adopted that rule. See A. L. R. annotation to Fry v. O’Leary, 141 Wash., 465, 252 P., 111, 49 A. L. R., 1249.
The respondent claims further that there was no change in the relationship of relator’s property to West Federal street to which relator had access both before and after the improvement; that although relator had access from Market street to Spring Common before the improvement, he still has access to Market street although it became a cul-de-sac; and that since he still has access to these streets he has suffered no legal damage from the change of grade on Spring Common. In this respect, the respondent re *354 lies on the cases of New York, Chicago & St. Louis Bd. Co. v. Bucsi, 128 Ohio St., 134, 190 N. E., 562, 93 A. L. R., 632, and City of Bellevue, ex rel. Vickery, City Solicitor, v. Stedman, 138 Ohio St., 281, 34 N. E. (2d), 769.
It is to be noted, however, that in those cases the properties did not abut on the streets at points where the improvements were made but were some distance away from the improvements which closed the streets upon which the properties abutted, thereby creating cul-de-sacs, but did not otherwise interfere with reasonable access to the streets upon which the properties abutted and to other streets unaffected by the improvements. Those cases are clearly distinguishable from the instant case and other cases of like character in that respect.
The respondent claims further that the relator did not suffer damages by the change of grade of the street in question since access to the street had already been foreclosed to him through the force of a city ordinance of the city of Youngstown prohibiting the parking of vehicles on either side of the street upon which the property abuts.
The respondent in making this claim clearly misapprehends the force and effect of the ordinance in question. The abutting owner’s right to access to his property from a street or highway cannot be destroyed or unreasonably affected by the provisions of a parking ordinance. Such interference would likewise be a '‘taking” of property without compensation. The case of Branahan v. Hotel Co., 39 Ohio St., 333, 48 Am. Rep., 457, involved an ordinance of the city of Cincinnati permitting hacks to occupy as a hack stand the side of a street upon which plaintiff’s storerooms abutted. In the opinion in that case Chief Justice Johnson said:
‘ ‘ The owner of lots abutting upon a public street in *355 a city or village has a peculiar interest in the street, -distinct from the right of the public to use the street. It is a private property right in the nature of an incorporeal hereditament attached to his contiguous grounds and the erections thereon, without which his property would be of comparative little value. The right of access to the street for business purposes is of great value. The finding of the court is, that this is destroyed. This easement appendent to the abutting property is a valuable property right of which the owner cannot be divested except when taken for public use and after due compensation.
“The city is clothed with power over the streets, and is charged with the duty of keeping them open for public use and free from nuisance.' It may enlarge these general public uses without infringing the rights of the adjacent owner, but where additional burdens are imposed even for a public purpose, which materially impair the incidental property right of the lot owner, equity will enjoin, until compensation is made. * * *
“The supervision and control of the public highways of a city is a public trust, and while additional uses may be imposed, not subversive of, or impairing the original use, such as laying down gas and water mains; yet the rights of the public to use it as a street, and of the adjacent lot owner to enjoy it as the means of access to his property, cannot be materially impaired. ”
To the same effect are the cases of Village of Wonewoc v. Taubert, 203 Wis., 73, 233 N. W., 755: Haggenjos v. City of Chicago, 336 Ill., 573, 168 N. E., 661; City of Chicago v. McKinley, 344 Ill., 297, 176 N. E., 261; Clark v. Fry, 8 Ohio St., 358, 383, 72 Am. Dec., 590; Hamilton, Glendale & Cincinnati Traction Co. v. Parish, 67 Ohio St., 181, 191, 65 N. E., 1011, 60 L. R. A., 531; Murphy v. Leggett, 164 N. Y., 121, 58 N. E., 42; Searcy v. Noll Wetty Lumber Co., 295 Mo., 188, 243 S. W., 318, 23 A. L. R., 813.
*356 As a basis for the maintenance of this action, the relator in his petition sets ont the provisions of Section 1178-37, General Code, hereinafter quoted, which, he alleges, imposes a duty upon the respondent Director of Highways, and provides a method, to compensate relator for property taken; and alleges the refusal of the Director of Highways to follow such statutory procedure, that because of such failure to comply with the statute relator filed suit for compensation and damages against the respondent in the Common Pleas Court of Franklin County, and that respondent in such action denies all liability to relator and asserts a constitutional and statutory immunity to any claim which relator has or may have for compensation or damages.
Eespondent in his answer admits that there has been no entry on his journal for a finding to appropriate relator’s property in accordance with Section 1178-37, General Code, and alleges for an affirmative defense that no property of plaintiff was taken or used in this improvement.
This court having determined, from the stipulations of the parties, that in the reconstruction of the Spring Common bridge there was a substantial change of grade of the street upon which relator’s property abuts, and that, if damages to the property have thereby accrued, the relator is entitled to reimbursement, it becomes necessary to determine whether the relator may maintain this action in mandamus.
Section 16, Article I of the Constitution, provides:
“All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
“Suits may be brought against the state, in such courts and in such manner, as may be provided by law.”
*357 Section 1178-2, General Code, provides, in part:
“The Director [of Highways] is hereby-authorized to purchase or appropriate property necessary for the location or construction of any * * * bridge or viaduct, or the approaches thereto, including any property needed to extend, widen or alter any * * * street or way adjacent to or under any such bridge or viaduct when the extension, widening or alteration of such * * * street or way is necessary for the full utilization of such bridge or viaduct, or for any other highway improvement * * *. Title to property purchased or appropriated by the director * * * shall be taken in the name of the state by easement deed * * *.”
Section 1178-9, General Code, provides, in part, as follows:
“The director shall not be suable, either as a sole defendant or jointly with other defendants, in any court outside of Franklin county in any action not otherwise specifically provided for in this act * * * except by a property owner to prevent the taking of property without due process of law, in which case suit may be brought in the county where such property attempted to be taken is situated.”
Section 1178-37, General Code, provides, in part:
“If the director is unable, for any reason, to purchase property for any purpose authorized by this chapter, he shall first enter on the journal of the Department of Highways a finding that it is necessary for the public convenience and welfare to appropriate such property as he may deem needed for such purposes, or any of them. Such finding shall contain a definite, accurate and detailed description of such property deemed needed, and the name and place of residence, if known or with reasonable diligence ascertainable, of the owner or owners of the property appropriated.
“The director shall in such finding also fix what he *358 may deem to be the value of such property appropriated, together with damages to the residue, if any, and deposit the value thereof, together with such damages, if any, with the Probate Court or the Court of Common Pleas of the county within which such property, or a part thereof, is situated, for the use and benefit of such owner or owners, and thereupon the director shall be authorized to take possession of and enter upon said.property for any and all such purposes.”
This section further sets out the procedure in such cases as described substantially in relator’s petition.
Section 1178-38, General Code, provides, in part, as follows :
“If any owner of property appropriated by the director is not satisfied with the amount as fixed by the director, such owner may, within ten days * * * file a written petition * * * in the court, setting forth an intention to appeal from the amount so fixed by the director. Said petition shall contain a legal description of the property appropriated, and a prayer that the amount due the appellant be determined according to law.”
The remainder of this section provides the procedure for a trial before a jury as in appropriation cases to determine the amount of compensation to which the owner may be entitled, and for appeal to the Court of Appeals at the instance of either party. This section provides also, as in other appropriation cases, that the Director of Highways, if he has not occupied or changed the property appropriated, may at any time, but not later than 30 days after the final determination of the cause, elect to abandon the appropriation proceedings upon the payment of the costs and reasonable attorney fees to be fixed by the court.
It seems clear under the statutory provisions above outlined that, if the highway director had determined to take any physical part of relator’s property for the prosecution of the improvement in question, he could *359 have done so under the procedure provided by Sections 1178-37 and 1178-38, General Code; and it likewise seems clear that if the highway director had taken any part of the physical property for such purpose without following such procedure, the relator by action in mandamus could have required him to do so. Does the fact that the question here involved relates to the taldng of easement rights in streets upon which relator’s property abuts and to claimed damages to the remainder of the physical property change the procedural rights of the parties? The answer must be in the negative with the consequent result that the relator has a proper right of action in mandamus. The writ will be allowed.

Writ allowed.

Weygandt, C. J., Stewart, Middleton and Matthias, JJ., concur.