LEON J. KIRYLAK AND LUCY KIRYLAK, HIS WIFE, PLAINTIFFS, v. MAYOR AND COUNCIL OF THE BOROUGH OF EDGEWATER, DEFENDANTS.

THOMAS BRADLEY, PLAINTIFF, v. BOROUGH OF EDGEWATER, DEFENDANT.

Superior Court of New Jersey
Law Division

November 20, 1974.

462

*Messrs. Witlman, Anzalone, Bernstein & Dunn,* attorneys for plaintiffs Kirylak.

*Mr. William C. Meehan,* attorney for defendants.

*Messrs. Fierro, Fierro & Mariniello,* attorneys for plaintiff Bradley.

MONAGHAN, J. D. C., Temporarily Assigned. There are two actions involved here which have been consolidated. One was instituted by plaintiff Thomas Bradley to compel the Borough of Edgewater to enforce the provisions of *N. J. S. A.* 39:4–136, which will be discussed hereinafter. As a result of action taken by the council in passing an ordinance regulating parking, this complaint actually becomes moot.

The second suit is brought by homeowners, husband and wife, in which they basically seek to set aside an ordinance of the Borough of Edgewater, *viz.* Ordinance No. 548–73, which prohibits all parking on Leary Lane, where plaintiffs own a home.

The Kirylaks moved into Edgewater on September 15, 1962. Leary Lane is a dead-end street that runs for approximately 220 feet and has a paved surface approximately 16 feet wide. There is only one point of ingress–egress from River Road. On August 15, 1973 the Kirylaks moved out of Edgewater although they retained ownership of that home and rented it. During their 11 years of residence on Leary Lane, the Kirylaks and all other homeowners were allowed to park legally on the north side of the street. The ordinance in question was passed in November 1973. The lot at 5 Leary Lane is residential, with a 40-foot frontage. There is no driveway or garage. This lot is approximately 4½ feet above street level.

While residing in Edgewater the Kirylaks and others had often complained to borough officials about parking problems on their street. Frequently the driveways and paths leading to these homes had been obstructed by parked cars. With the passage of time the problem worsened. A three-family home was built on Leary Lane in 1972 as a result of a court order overruling the determination of the board of adjustment. Finally, in November 1973, as a result of a petition by most of the property owners on Leary Lane, the Edgewater council passed the no-parking ordinance. All of the property lots on Leary Lane, except for the Kirylaks, have off-street parking facilities.

On-street parking is available on certain sections of River Road, which is located at the beginning of Leary Lane, although all parties admit that this street is a busy and dangerous roadway. The problems posed by parking on Leary Lane are not confined to obstructing driveways. Although there have been no serious incidents, concern has been expressed by fire and police officials about the accessibility of

Leary Lane to emergency vehicles if cars are parked on one side.

The ordinance in question was first proposed at the Edgewater council meeting of October 2, 1973. The entire ordinance was not read, but simply the title. Subsequently the borough clerk sent a copy of the proposed ordinance to the Department of Transportation in Trenton for its approval. This department suggested that the proposed ordinance be changed to provide for lower violation penalties. The clerk made this change without a resolution or formal amendment by the council. The revised ordinance was then properly published naming November 8, 1973 as the date for a public hearing. On that day the Kirylaks appeared and entered their objection to the proposed ordinance. Thereafter the ordinance was given a final reading and adopted by the council. The Kirylaks' tenants have been given parking tickets for parking their cars in violation of the ordinance in question. Pending the final disposition of this matter, the court has stayed the daily ticketing of cars found parked on the north side of Leary Lane.

■ The first issue concerns the validity of the adoption of the challenged ordinance. The crux of the problem is that the ordinance finally adopted is not the same as the ordinance originally introduced because of the change in the penalty clause by the clerk. The court feels that although a technical violation of N. J. S. A. 40:49–2 exists, there has been substantial compliance with the statute. Thus, the ordinance is valid. The purpose of this statute is to publicize proposed legislation and provide an opportunity to object. The Kirylaks had this opportunity here, for the ordinance published in the newspaper was the same as the one finally adopted. See McQuillin, Municipal Corporations, § 16.10, at 145, and Campbell v. Teaneck, 101 N. J. L. 461 (Sup. Ct. 1925). Cf. Stirling v. Plainfield, 136 N. J. L. 38 (E. & A. 1947), and Masnick v. Mayor, etc., Cedar Grove Tp., 99 N. J. Super. 436 (Law Div. 1968).

Plaintiffs also contend that the ordinance in question is not a valid regulation of parking, as permitted by *N. J. S. A.* 39:4–197, but instead is a prohibition of all parking. It is urged that this is a valid distinction. The court feels to the contrary. *N. J. S. A.* 39:4–136 prohibits parking when there is less than 15 feet of clear passage from the side of a parked vehicle. To allow parking on Leary Lane would violate this statute.

Plaintiffs further allege that the ordinance is invalid because it is unreasonable and places an undue burden on their property. It is not unreasonable because, as previously mentioned, the state statute prohibits parking where there is less than a clearance of 15 feet. Here, unquestionably, there is considerably less than this distance if parking is permitted on either side of the street. Moreover, this is not the only street in Edgewater where parking is prohibited on both sides of the street. On March 16, 1954 a parking ordinance was passed which prohibited parking on both sides of 13 streets.

Plaintiff's argument that the ordinance places an undue burden on their property is more persuasive. A driveway could be constructed on their property. However, although there is a wide range in the testimony regarding cost of installation, the court finds that it would be substantial. Moreover, there would be a severe grade because of the difference in elevation between the property and the street. Aesthetically a driveway would be extremely detrimental.

Plaintiffs argue that there are alternative methods of solving the problem which would cause less hardship to them. For example, one proposal is to condemn certain property and widen the street in an area opposite plaintiffs' property. However, the court cannot and will not substitute its discretion for that of municipal authorities on the choice of alternatives. *Bruno v. Long Branch*, 35 *N. J. Super.* 304 (App. Div. 1955); *Travis v. Borough of Highlands,*

136 *N. J. L.* 199 (Sup. Ct. 1947) and *Peoples Rapid Transit v. Atlantic City*, 105 *N. J. L.* 286 (Sup. Ct. 1928).

Plaintiffs place great stress on the case of *Giant Tiger Corp. v. Trenton Board of Commr's*, 11 *N. J. Misc.* 836 (Sup. Ct. 1933). In that case a commercial tenant brought an action against Trenton for adopting an ordinance that banned all parking on the street leading to his business. The court found that ordinance unreasonable, as there appeared to be no justification for this parking ban. The court said (at 809): "The burden is upon the prosecutors to show that an ordinance was unreasonable, and we think that they have carried that burden." See also, *Pivnick v. Newark*, 14 *N. J. Super.* 134 (Law Div. 1951). This court agrees with that statement, but feels that in this case plaintiffs have not sustained the burden of proof necessary to void the questioned ordinance. Edgewater was faced with a serious problem, *viz.*, parking of vehicles on a street that is too narrow. The residents on Leary Lane, including the Kirylaks while they lived there, have long been urging the Edgewater council to help with this problem. It is true that, as property owners, the Kirylaks have some interest in the use of the street in front of their home. However, this interest is clearly subordinate to the good of the general community. *Morris v. Eisner*, 96 *N. J. Eq.* 538 (Ch. 1924); *Newark v. Local Government Board of N. J.*, 133 *N. J. L.* 513 (Sup. Ct. 1945). *Cf. Haggenjos v. City of Chicago*, 336 *Ill.* 573, 168 *N. E.* 661 (Sup. Ct. 1929), and *Salomone v. City of Canton*, 30 *Ill.* App. 2d 474, 175 *N. E.* 2d 663 (App. Ct. 1961). Moreover, the purchase price of this residence in 1962 had to reflect the neighborhood as well as the lack of parking facilities.

I find in favor of defendants. While I appreciate the predicament plaintiffs find themselves in, I do not believe they have proven unreasonableness to a degree that will overcome the presumption in favor of the validity of the ordinance. *Rudderow v. Mt. Laurel Tp. Comm.*, 121 *N. J. Super.* 409 (App. Div. 1972); *Gold v. Trenton*, 121 *N. J.*

*Super.* 137 (App. Div. 1972); *Hourun v. Union Tp. Comm.,* 99 *N. J. Super.* 58 (App. Div. 1968).

The problem is one that plagues many older communities in · New Jersey which were developed long before the automobile and present-day planning concepts. There is no happy solution which does not cause severe inconvenience to property owners. Nevertheless, for the good of the community and in the interest of safety, the rights of the public as a whole must be paramount. Cf. *DeLorenzo v. Hackensack,* 9 *N. J.* 379 (1952).

Judgment for defendants in both actions.